WILLIAM MARTIN, Appellee, v. FARMERS' INSURANCE COMPANY OF CEDAR RAPIDS, Appellant.

1. **Fire Insurance**: MISTAKE IN DESCRIPTION OF PREMISES TO BE INSURED: EFFECT.   Where by mutual mistake a policy of insurance against fire described premises situated a quarter of a mile distant from those intended to be insured, *held*, that until the mistake had been corrected by a court of equity, an action upon the policy to recover for the loss of the premises intended to be insured could not be maintained, in the absence of any plea of estoppel, or other plea, to which evidence in regard to the mistake would be admissible.

2. ———: CONDITIONS IN POLICY: WAIVER: AUTHORITY OF AGENT.   A provision in a policy of insurance that an incumbrance of the insured premises, made after the beginning of the term of insurance, without the written consent of the secretary of the company, should render the policy void, cannot be waived by an agent whose only authority is to receive applications for insurance in accordance with instructions received from his employers, and to receive and transmit premiums.

*Appeal from Marshall District Court.*—HON. D. R.
HINDMAN, Judge.

· WEDNESDAY, FEBRUARY 3, 1892.

ACTION at law on a policy of insurance to recover
the value of property destroyed by fire.   There was a
trial by jury, and a verdict and judgment in favor of
the plaintiff.   The defendant appeals.—*Reversed.*

*F. C. Hormel*, for appellant.

*Brown & Miller*, for appellee.

ROBINSON, C. J.—The policy in suit is dated July
12, 1888, and purports to insure the plaintiff against
loss or damage by fire or storms to the amount of five
hundred eighty-three dollars on a frame dwelling
house and certain personal property while therein, and
on other property, which need not be specified, for the
period of five years from the tenth day of July, 1888.
The dwelling house is described in the policy as situated
on "lot 1 in block 2, of Albion, Marshall county,
Iowa."   The plaintiff claims that on the twenty-ninth
day of December, 1888, the house and a portion of the
personal property therein which was covered by the
policy of insurance were destroyed by fire, and that due
notice and proof of the loss were given to the defend-
ant.   The issuing of the policy is admitted by the
defendant, but it denies that it ever received verified
proof of loss, and avers that at the time of the fire in
question the policy was void by reason of a mortgage
which the plaintiff had given on the dwelling house
without the knowledge of the defendant, and contrary
to the conditions of the policy.   The answer also
denies explicitly that any dwelling house or other
property on the lot named was destroyed or damaged
by fire.   The reply admits the making of the mortgage
after the policy was issued, but alleges that an agent of

the defendant, with ample power to take risks, waive forfeitures and cancel policies, informed the plaintiff at the time the mortgage was given that it would not affect the insurance, and waived the giving of the same and the forfeiture clause in the policy.

I. The evidence tends to show that the policy was intended to cover the property destroyed; also that the premises on which it was situated were not described in the policy, but were bounded by lines described as follows: "Commencing sixteen rods south of the northeast corner of the southeast quarter of the northwest quarter of section 6, in township 84 north, of range 18 west; thence running south one hundred forty-two feet; thence west twenty rods; thence north one hundred forty-two feet; thence east twenty rods, to the place of beginning." These premises are situated more than one fourth of a mile from the lot described in the policy. There is also evidence which tends to show that the agent of the defendant who took the application for insurance was to some extent responsible for the mistake in the description; but that there was a mistake, and that the policy was intended by the plaintiff and the agent to cover the property destroyed, we may regard ' as established beyond question. It is insisted, however, that the policy must be corrected to conform to the intent of the parties before a recovery thereon can be had. That the mistake might have been corrected by a court of equity is clear, but whether there could be a recovery on the policy in any case before it is reformed we need not determine. In this case there is no plea of estoppel or other plea to which the evidence in regard to a mistake is relevant or material. It is only necessary to say that under the issues joined proof that the property destroyed was not described in the policy is fatal to a recovery by the plaintiff. *Zimmerman v. Farmers' Insurance Co.*, 76 Iowa, 354; *Collins v. St. Paul F. &*

1. Fire insurance: mistake in description of premises to be insured: effect.

*M. Insurance Co.*, 46 N. W. Rep. (Minn.) 906; *Landers v. Cooper*, 22 N. E. Rep. (N. Y. App.) 212.

II. The policy contains a provision to the effect that an incumbrance of the insured property, made after the beginning of the term of insurance without the consent in writing of the secretary of the defendant, should render the policy void. In November, 1888, the plaintiff gave a mortgage on the premises which he had intended to have described in the policy, without the consent of the secretary named. It is claimed, however, that an agent of the defendant consented to the giving of the mortgage, and waived a forfeiture by reason of it. It is shown that an agent named Warring took the application for the insurance, and that he was present when the mortgage was given. The plaintiff testifies in regard to a conversation had at that time with Warring as follows: "I asked Mr. Warring if that mortgage would make any difference in regard to the insurance policy, and says he, 'No, sir; I think not.' * * * He told me, when I asked him that question, that he did not think it made any difference with the company; that the mortgage didn't make any difference. * * * I did not ask him if I should write to the company. I asked him if it would make any difference with the company whether I notified them of this mortgage or not. Says he, 'I think not.'"

These extracts contain substantially all the evidence in regard to the alleged waiver by the agent. Without determining what effect should be given to his statements if he were duly authorized to waive requirements of the policy, we search the record for proof of his authority, and find two papers relating to his agency. One is a certificate issued by the defendant, the body of which reads as follows:

"This certifies that O. W. Warring, of Albion, Marshall county, Iowa, is authorized to receive applications for insurance in the Farmers' Insurance Company

*Marginal note: 2. ——: conditions in policy: waiver: authority of agent.*

of Cedar Rapids, within the state of Iowa, in accordance with instructions given and furnished to him from said company from time to time through its president or secretary; to transmit premiums therefor to the secretary of the company until the thirty-first day of January, A. D. 1889."

This was dated January 9, 1888. The other paper contains the following:

"Memorandum of agreement between O. W. Warring * * * and the Farmers' Insurance Company, witnesseth, that the said O. W. Warring, being duly appointed agent for the Farmers' Insurance Company, hereby agrees to devote his whole time and attention to the interests of said company, and to faithfully work such territory as may be assigned to him, and to work exclusively for said company, until January 31, A. D. 1888, and at all times to be governed by the instructions received from time to time from the officers of said company, four northeast townships of Marshall county, Iowa. In consideration of which the Farmers' Insurance Company agrees to pay said O. W. Warring two per cent. commission on all farm and detached dwelling business received from him during the continuance of this agreement and accepted by the company. It is further agreed and understood by both parties hereto that, in all cases where it does not appear from the application submitted that the applicant is good and responsible for the payment of the note or notes tendered in the payment of the premium under the laws of Iowa, the above-specified commission shall not be due and payable until such note or notes be actually paid to the Farmers' Insurance Company, when it shall be payable. It is further understood and agreed by both parties that all commissions not deferred under this agreement shall be payable at the close of each month. It is further understood that this agreement may be terminated by either party on giving thirty days' notice in writing." This instrument was dated April

28, 1887.   The policy was not delivered by the agent, but was sent to plaintiff by mail from Cedar Rapids by the defendant.   The authority of the agent was contained in the writings we have set out.   The plaintiff contends that it was that of a general agent.   We do not think the writings will bear that construction.   The one first given confers power only to receive and transmit to the defendant applications and premiums in accordance with instructions furnished from time to time.   The second paper in the order in which we have given them was the first in force, and specifies the manner in which the agent shall discharge his duties, designates the territory in which he is to labor, and fixes his compensation and the times of its payment.   If it contains anything in conflict with the certificate, the latter must prevail.   But it is our opinion that there is no conflict; that the certificate was designed to confer and limit the powers which the agent was to exercise; and that he was authorized to act as a soliciting agent only, without the power to issue policies or waive their provisions.   The giving of the mortgage without the consent of the secretary operated to terminate the policy. There is some claim that there is evidence to show that the premises owned by the plaintiff were properly described as a lot, and that the mortgage was not on the insured property; but the conclusions we have announced are clearly authorized by the record, and the evidence relied upon to show to the contrary was not sufficient to raise an issue for the determination of the jury.

III.   Some objection is made to the assignment of errors, but we find it sufficient.   What we have said disposes of the controlling questions in the case.   The judgment of the district court is REVERSED.